All right, we'll hear you. Thank you, Your Honor. May it please the Court, my name is Mark Ebert and I represent Mr. David Nichols. I'd like to point out what I see as the two biggest errors in the decision of the Court below and also in the State's analysis of this case, and then, of course, answer all of the questions you may have. First, the Court below conflated Mr. Nichols' failure to unregister with the police when he left Rockland with failing to register a new address after he left. And the District Court did that at page 44 of the report and recommendation, which, of course, is what's on appeal here. And by doing that, it then proceeded to apply the distinction between failure to register a new address and failure to update registration, which leads to a completely wrong analysis for two reasons. One, that's not what Mr. Nichols was charged with and it's not what he was convicted of. And two, after Mr. Nichols left Rockland, he never had an address that he was required to register under California law with California. Well, just a minute. If I look at Crosby v. Schwartz, how is this different? Okay. Second. I realize you're trying to parse what you're saying here and try to get me to parse, but I don't see it quite the same way as you, so I'm just trying to get you right to I got Crosby v. Schwartz. I understand. This was a sentence of 26 to life for failing to register after a change of address, which seems to be exactly this. Actually, I would argue, and I believe that what is much closer to this is the Gonzales case, which found that it was cruel and unusual to impose the same... Well, but Gonzales was not quite this case. That's right. It's neither case. I mean, it seems to me that this case, dead on with Crosby, that your client failed to register after changing an address. No, Your Honor. The reason Crosby doesn't apply, in my opinion, is number one, that is not what Mr. Nichols was charged with. He was charged with failing to unregister after he left. And number two, once he left, he wasn't required to register with California. This is a California registration requirement. If he's out of the state, which he was, and there's no contradictory evidence to contradict that, then he's not required to register with California. If he's in transit for less than five days within the state, he's not required to register with California. That's what he testified was the fact. There's no contradictory evidence, and the prosecutor agreed on cross-examination of Mr. Nichols that that was a correct statement of the law. But isn't it so that he no longer lived at his last registered address at the time of his arrest? Yes, that is correct. And isn't it also true that his failure to register then would have impeded the police's ability to find him for their surveillance? Two things. One, again, I don't want to be the death horse. No, just a minute. He wasn't charged with that. Answer my question. If he's no longer living at his last registered address at the time of his arrest, then why does his failure to register not impede the police's ability to find him? Two reasons. One is that there's actually two prongs of analysis. Speak to my question. Don't try to get a different analysis in under your characterization of the facts. What I'm trying to do is say what happened in this place and would it fit with the same stuff that Crosby said. If it won't, it won't. But I want you to concentrate on that because I'm stuck with Crosby. You may not be, but I am. He was not required to be under surveillance after he left Rockland. He was out of the state, which under California law does not require him to register. California cannot and does not conduct surveillance of a sex offender when he's out of the state. And to the extent that he was in the state for any brief period of time, he was in transit for less than five days, the law does not require him to register every day or every hour while he's traveling from place to place. So Rockland had no more interest and no more ability to put him under surveillance once he left and he was not subject to surveillance under California law once he left the state or was in transit, basically going out of the state. That's the reason. And the other thing that I just wanted to point out is that there are two lines of analysis. The one that would apply here is the three-prong test under the disproportionality analysis that the federal courts used. And the analysis that Your Honor was referring to, didn't it impede the purpose of the statute? That was relevant to the California court in analyzing the three strikes law and Ewing, the Supreme Court case, considered that relevant to its determination that the three strikes law was not essentially on its face or categorically unconstitutional. But Ewing and Crosby did not decide the issue here. And the issue here is failing to unregister. I'll be fair. I looked at Gonzales v. Duncan because I felt like that's where you were going to try to sidle up. And it seemed to me that there the defendant failed to re-register within five days of his birthday. Here I have a defendant who skips town without telling the police where he was going. And, therefore, thereafter fails to give authorities any information as to his whereabouts for almost a year. That seems a little bit more like Crosby than Gonzales. Actually, I think if you look at the, again, the three-prong analysis that applies to the federal court, it's really more like Gonzales than Crosby. I mean, it's still a passive act of omission, failure to unregister. It's still nonviolent. It's still something that caused no actual harm to anybody. There was no recidivism here. If you look at the gravity of the offense and you look at the facts, it's a lot more like the failure to update registration than the failure to unregister with a police department that had no more interest in him once he left. But when I look at Gonzales, he was still, as I understand it, living in the same place. Yes, correct. And Mr. Crosby was not. Right. And so when I look at your client, he was not at the same place. That's correct. So why isn't it that this case falls on the Crosby side versus Mr. Gonzales? I'm not sure what else I can add to what I've just said. And if it's not persuading you, it's not persuading you. That's all right. The fact is that he wasn't charged with that. He wasn't convicted of that. And the issue is whether or not the sentence that was imposed for the act of omission, the failure to do something which led to no harm, which was nonviolent, whether that is something that is under- Well, he failed to do something he had a duty to do. That's right. He did. But the question is whether it's cruel and unusual, the sentence that was imposed. Right. And it was a felony? It was a felony. And it was a third? And it was a third strike. But to the extent that the state is arguing that Ewing somehow made that a categorical rule, that if it's a felony, then the rest of the three-part test and the proportionality analysis goes out the windows, that's not true. Graham v. Florida, which is a 2010 case, says that Hamlin and Ewing are the same. They both apply the proportionality test. And, in fact, Ewing did so. It didn't reach the third stage because it didn't have to. It found no inference of proportionality. But the same test applies. And I would argue that what you have to look at is not how offenses are categorized or characterized because, in many states, what Mr. Nichols did here isn't even a crime. Right. Or it's a misdemeanor. We can't really put the scales all on the current felony. If we look at Ewing, it says we must place the scales not only on his current felony but also on his long history of felony recidivism. Correct. Any other approach would fail to accord proper deference to policy judgments of the legislature. Correct. So, in this case, we just don't have what he's now accused of or convicted of. We also have pretty heavy crimes that are on this list, again, similar to Crosby. And, again, the—I'm sorry. If you're not—if you're finished. And all I'm trying to do is say, I mean, in Ewing, they stole three golf clubs. He still got 25 to life because they looked at other sentences he'd had prior. In Lockyer, I'm not sure the five videotapes was much different than this, but they didn't concentrate on the five videotapes. Some of us are veterans of that. Right. Attempt to apply the eighth amendment. And my response to that, Your Honor, is look at Gonzalez because the prior record in Gonzalez was nearly identical to Mr. Nichols' prior record with one exception. Mr. Gonzalez actually did commit a sex crime against a minor, which did not occur in this case. So if the entire totality, both of what he did and his prior record in Gonzalez, was not enough under the three-part test that the Supreme Court requires, then it shouldn't be here. And you're right, Your Honor. I rely on Gonzalez. And one more case, I'll just tell you what it is because I know my time is up. Is it in your brief? Yeah. In Ramirez is the other case. Same, everything the same except for a different effect. All right. Thank you. Good morning, Your Honors. David Andrew Eldridge, Deputy Attorney General for Respondent. I think you're left to tell us why this is Gonzalez and not why this is, I would expect you'd say Crosby and not Gonzalez. Based on his argument, based on the charge, what he was convicted of. I should be clear what the charge was is if you move out of the city, you must inform the local police within five days of moving of your new address. The argument that that city has no particular interest in him misses the mark that this is a state statute, and the state has an interest in working with other jurisdictions to keep track of people who are required to register. So the state of California helps other states keep track of them, other states help California. So you can't just say because I'm no longer the burden of the local police, there simply is no interest at all in my location. So telling the local city that I'm no longer here means it can go into the state database, and then frankly it can go to everyone else who can try to find out where he is. So that makes it more like Crosby. It does, although as you've seen in my brief, in my view, Crosby itself was, I believe it took too crabbed a viewing in the first place. I know there's been discussion of whether there was a majority opinion, but to be clear, the United States Supreme Court's cases don't speak in terms of whether there's a majority opinion, but whether there is a holding versus dicta, and there was clearly a holding in Ewing. I have no further affirmative points to make. I am happy to answer questions. Do you have any questions, Judge? I don't at this time, no. Do you? Thank you. Thank you, Your Honor. Thank you for submitting the case. We appreciate it. And Case 13-17043 is then submitted.
judges: Gleason, Schroeder, Smith